OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The driver, Richard N. Wood, and passenger, Jae Brown, were injured when a left front tire blew out causing the truck they occupied to leave the road and overturn. Both were seriously injured. The two were engaged in the course of their employment by Norman Tidd, doing business as Ithaca Rigging, Inc.
Wood and Brown bring claims against Edgar Neff, the owner of an automotive repair shop, alleging negligence as well as intentional and negligent misrepresentation. On a prior motion, an additional claim against Neff, for breach of warranty, was dismissed (Brown v Neff, 159 Misc 2d 186).
*153 Neff, on March 12, 1990, issued a certificate to the owner of the truck, Norman Tidd, attesting that a State safety inspection had been performed and that the truck met all requirements. The accident happened five months later on August 15, 1990. The cause, according to a State Police report, was a defective left front tire.
Discovery having been completed, Neff now moves to dismiss the negligence claims of Wood and Brown. Tidd, a third-party defendant, joins Neff, the third-party plaintiff, in the motion. Neff argues that, even if the left front tire was visibly defective at the time of the inspection and that his inspection was negligently performed, he owed no duty to warn plaintiffs since both were fully aware of the defective condition of the tire before the accident and assumed the risk. By continuing to operate the machine with knowledge of the defect and the consequent danger, Neff contends, the chain of causation between his negligent inspection and the accident was broken by the supervening conduct of the plaintiffs. Hence, his negligence, if any, was not a proximate cause of the accident.
We agree with defendant that the available facts suggest that Wood was well aware of the dangerous condition of the tire. Wood denies that he had any responsibility for the maintenance of the truck, and took no notice of the condition of the tires. There is evidence, however, that Wood had advised his son, also employed by Tidd, to find other work because the truck was unsafe. Brown claims ignorance of the danger and, at the moment, there is no dispositive proof to the contrary.
Miller v Higgins (57 AD2d 1010) held that a violation of the inspection statute could be a proximate cause of a later accident, assuming the defect (inadequate brakes) existed at the time of the inspection, should have been discovered in the exercise of reasonable care, and that the cause of the accident could be attributed to the specific defect which the inspection had failed to discover and act upon, as required by law. Here, there is evidence that the tire was visibly bald, or balding, at the time of the inspection and that this condition continued until August when the accident occurred. We accept that conclusion, for present purposes. It would seem, therefore, that questions of fact exist regarding the issues of negligence and proximate cause.
The threshold question, however, is whether Neff owed any duty to Wood and Brown. If not, the negligence and proximate cause questions recede into irrelevance. Section 311 (1) of the Restatement (Second) of Torts states the pertinent rule:
*154 "One who negligently gives false information to another is subject to liability for physical harm caused, by action taken by the other in reasonable reliance upon such information, where such harm results * * *
"(b) to such third persons as the actor should expect to be put in peril by the action taken”.
Clearly, the driver and passenger of a vehicle which is certified to be safe, but which a reasonably careful inspection would have shown to be unsafe, are among the "third persons” who, Neff should have realized, would be imperiled. (See, Restatement [Second] of Torts § 311, comment d, illustration 8; comment e.) Indeed, Miller v Higgins (supra) extends the inspector’s duty to third parties, including pedestrians, who might be expected to encounter the faulty vehicle in the streets.
Neff argues, however, that even if his duty initially extended to the plaintiffs, any responsibility he may have had to give warning of a dangerous condition never arose because the danger was apparent at the time of inspection, or thereafter lapsed because the danger became known and fully comprehended before the accident. In effect, Neff argues, the plaintiffs will be unable to establish their "reasonable reliance” upon the certificate of safety and that Wood, and perhaps Brown, impliedly assumed the risk of a known danger.
Absent an express agreement, or other evidence that plaintiff has consciously waived the defendant’s duty of care in the face of a known danger, the defense of assumption of the risk is not absolute but simply serves to limit the defendant’s liability (Morgan v State of New York, 90 NY2d 471, 483-486; Turcotte v Fell, 68 NY2d 432, 438; Arbegast v Board of Educ., 65 NY2d 161). Clearly, the culpable conduct of the plaintiffs will loom large at trial but, absent evidence of an express assumption of the risk, the jury must be asked to diminish any damages to the extent that plaintiff voluntarily encountered the risk of harm with a full understanding of the possible consequences (PJI2d 2:55).
In any event, "the plaintiff is barred from recovery only if his choice is a free and voluntary one.” (Prosser and Keeton, Torts § 68, at 490 [5th ed].) Wood and Brown were hired hands and, consequently, their continued willingness to drive the truck, knowing of its defects, may have been a condition of their continued employment. The nature of their relationship to Tidd is not yet clear. The cases (e.g., Broderick v Cauldwell-Wingate Co., 301 NY 182, 188) suggest that an employer’s direc *155 tions "to proceed under circumstances recognizable as dangerous” may supersede the "reasonable reliance” requirement of section 311 of the Restatement (Second) of Torts. Assuming that plaintiffs were following the instruction of Tidd, the jury would be required to consider whether they acted reasonably under the circumstances and to what degree they should be charged with culpable conduct (PJI2d 2:56; CPLR 1411).
It is important to note that Neff’s duty was not limited to the issuance of a warning about a latent danger. As an agent of the State, Neff was obliged to certify the safety of the vehicle or to refuse to issue a certificate if the truck failed to meet the requirements of the statute and the regulations. In that event, he was required to issue a notice directing the owner to make repairs or corrections within 30 days (Vehicle and Traffic Law § 304 [b]). The absence of the certificate would have required Tidd to take the truck out of service. It would have prevented Wood from driving the truck and, arguably, would have averted the accident and the injuries to Wood and Brown. Surely it is open to argument that the negligent and improper issuance of the certificate was at least one of the significant factors in causing the accident.
The conduct of Wood and Brown, in continuing to operate the truck, may well diminish or defeat their claims for compensatory damages at trial (CPLR 1411). However, any such negligence is not, as a matter of law, a superseding cause of the injury to himself or to Brown under the rule restated at section 447 of the Restatement (Second) of Torts. Indeed, the fact that Tidd may have electecLto continue to dispatch the truck on the business of Ithaca Rigging, with Neff’s badge of safety attached, would seem to be "a normal consequence of a situation created by [Neff’s] negligent conduct” and, therefore, "not a superseding cause of harm which such conduct has been a substantial factor in bringing about” (Restatement [Second] of Torts § 443; see also, Lynch v Bay Ridge Obstetrical & Gynecological Assocs., 72 NY2d 632, 636-637; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315; PJI2d 2:72; Prosser and Keeton, Torts § 44, at 303 et seq. ["Foreseeable Intervening Causes”]).
In sum, questions of fact are present which preclude summary judgment and the defendants’ motions must be denied.