[878 NE2d 1001, 848 NYS2d 585]

GREGORY G. STIVER et al., Appellants, v GOOD & FAIR CARTING & MOVING, INC., Respondent.

Argued October 11, 2007; decided November 19, 2007

## POINTS OF COUNSEL

*Edward C. Cosgrove,* Buffalo, for appellants. Defendant had a duty of care to third parties endangered by the negligent performance of motor vehicle inspections. (*Church v Callanan Indus.,* 99 NY2d 104; *Hamilton v Beretta U.S.A. Corp.,* 96 NY2d 222; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579; *Lauer v City of New York,* 95 NY2d 95; *Steitz v City of Beacon,* 295 NY 51; *Strauss v Belle Realty Co.,* 65 NY2d 399; *Koch v Otis El. Co.,* 10 AD2d 464; *Wisner v Harmas Holding Corp.,* 1 AD2d 957, 2 NY2d 855; *Kahner v Otis El. Co.,* 96 App Div 169, 183 NY 512; *MacPherson v Buick Motor Co.,* 217 NY 382.)

*Thorn Gershon Tymann and Bonanni, LLP,* Albany (*Erin Mead* of counsel), for respondent. I. Defendant owed no common-law duty of care to plaintiff. (*Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,* 76 NY2d 220; *Espinal v Melville Snow Contrs.,* 98 NY2d 136; *Moch Co. v Rensselaer Water Co.,* 247 NY 160; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579; *Church v Callanan Indus.,* 99 NY2d 104; *Pulka v Edelman,* 40 NY2d 781; *Eiseman v State of New York,* 70 NY2d 175; *World Trade Knitting Mills v Lido Knitting Mills,* 154 AD2d 99; *Northbrook Prop. & Cas. Ins. Co. v D.J.L. Warehouse Corp.,* 146 AD2d 574; *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507.) II. No private right of action can be implied from the statutory scheme governing the conduct of State-mandated motor vehicle inspections. (*Sheehy v Big Flats Community Day,* 73 NY2d 629; *CPC Intl. v McKesson Corp.,* 70 NY2d 268; *Carrier v Salvation Army,* 88 NY2d 298; *Hammer v American Kennel Club,* 1 NY3d 294; *Mark G. v Sabol,* 93 NY2d 710; *Pelaez v Seide,* 2 NY3d 186; *Gain v Eastern Reinforcing Serv.,* 193 AD2d 255; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,* 76 NY2d 220; *Miller v Higgins,* 57 AD2d 1010; *Wood v Neff,* 250 AD2d 225.) III. Public policy precludes the imposition of liability in this case. (*Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,* 76 NY2d 220; *Strauss v Belle Realty Co.,* 65 NY2d 399; *Tobin v Grossman,* 24 NY2d 609.) IV. Defendant breached no duty to plaintiff as the governing regulations did not require an inspection of the part which broke. (*Rutherford v Signode Corp.,* 11 AD3d 922; *Baehre v Sagamore Resort Hotel,* 4 AD3d 810; *Van Ostberg v Crane,* 273 AD2d 895.)

*Fiedelman & McGaw,* Jericho (*Andrew Zajac* and *Dawn C. DeSimone* of counsel), *Martin F. Hayes, Rona L. Platt* and *Brendan T. Fitzpatrick* for Defense Association of New York, Inc., amicus curiae. Good & Fair Carting & Moving, Inc. was entitled to the dismissal of plaintiff's claims because it owed no duty of care. (*Pulka v Edelman,* 40 NY2d 781; *Eiseman v State of New York,* 70 NY2d 175; *Espinal v Melville Snow Contrs.,* 98 NY2d 136; *Darby v Compagnie Natl. Air France,* 96 NY2d 343; *532 Madison Ave. Gourmet Foods v Finlandia Ctr.,* 96 NY2d 280; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579; *Palsgraf v Long Is. R.R. Co.,* 248 NY 339; *Turcotte v Fell,* 68 NY2d 432; *Oathout v Johnson,* 88 AD2d 1010; *Binghamton Masonic Temple v City of Binghamton,* 213 AD2d 742.)

## OPINION OF THE COURT

READ, J.

In the dusk of the evening of August 8, 2001, plaintiff Gregory G. Stiver was driving his automobile in the eastbound center lane of a divided highway in Tonawanda. The weather was fine; traffic was moderately heavy. Without warning, the vehicle immediately ahead of him shifted abruptly into the righthand lane. When plaintiff "looked to see what [this driver] was swerving to miss and started to apply the brakes," he saw a car stopped in the center lane, dead ahead of him. Unable to slow down or pull over into another lane in time to avoid a collision, plaintiff rear-ended the disabled car, which was owned and driven by Stephen Corbett. Plaintiff was wearing a seat belt and his automobile's airbag deployed upon impact. Nonetheless, his head struck the steering wheel with sufficient force to impair his right eye permanently.

On June 27, 2002, plaintiff, with his wife suing derivatively, commenced a lawsuit against Corbett for damages caused by the automobile accident, alleging that he had suffered a serious injury within the meaning of the No-Fault Law (*see* Insurance Law § 5102 [d]). During the course of discovery, Corbett testified at an examination before trial that, just before his car slid to a standstill, he heard a rumbling noise and experienced difficulty steering; he observed pieces of the vehicle's transmission rolling down the road. When he inspected his car just after the accident, he saw that the front right wheel was "sideways with the inside of it facing forward," and a half shaft, the driveshaft linking this wheel to the transmission, was disconnected and dangling from the vehicle's undercarriage.

Plaintiffs subsequently learned that on June 13, 2001, about two months before the accident, a mechanic employed by defendant Good & Fair Carting & Moving, Inc., had performed the required annual New York State motor vehicle inspection of Corbett's car, and had issued the certificate denoting that the car was in proper and safe working condition. On June 10, 2004, plaintiffs commenced this action against Good & Fair, alleging that the collision was caused by its negligent inspection of the Corbett vehicle.

On August 2, 2005, Good & Fair moved for summary judgment to dismiss the complaint on the ground that it owed no contractual or common-law duty to plaintiffs or, alternatively, breached no such duty. Plaintiffs opposed the motion. While acknowledging that Good & Fair would ordinarily owe no duty to third parties lacking contractual privity with Corbett, they claimed that this case was an exception to the general rule because Good & Fair launched an instrument of harm, and they detrimentally and reasonably relied on Good & Fair's inspection.

On November 10, 2005, Supreme Court denied Good & Fair's motion, citing the Appellate Division's decision in *Wood v Neff* (250 AD2d 225 [3d Dept 1998]) as controlling authority for the proposition that "an inspector's duties under the Vehicle and Traffic Law . . . extend to third parties as it is reasonably foreseeable that someone other than [the] owner may be injured in an accident because of a defect in a motor vehicle." Importantly, however, *Wood* was handed down before our decisions in *Espinal v Melville Snow Contrs.* (98 NY2d 136 [2002]) and *Church v Callanan Indus.* (99 NY2d 104 [2002]). Nonetheless, the trial court opined that it "ha[d] no alternative but to apply [*Wood*] . . . and conclude that there is a duty under the law, the breach of which may be the basis for a finding of negligence against" Good & Fair.

On September 22, 2006, the Appellate Division unanimously reversed Supreme Court's order on the law, granted the motion for summary judgment and dismissed the complaint. Citing several of our cases, most notably *Espinal* and *Church*, the court found no basis for deviating from the general rule that "recovery for negligent performance of a contractual duty is limited to an action for breach of contract, and a party to a contract is not liable in tort to noncontracting third parties" (*Stiver v Good & Fair Carting & Moving, Inc.*, 32 AD3d 1209, 1210 [4th Dept 2006]). We granted plaintiffs' motion for leave to appeal, and now affirm.

"[A] contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (*Espinal*, 98 NY2d at 138; *see also Church*, 99 NY2d at 111 ["(O)rdinarily, breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to noncontracting third parties upon the promisor"]). We have identified only three exceptions to this general rule, which we summarized in *Espinal*. These are

> "(1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launche[s] a force or instrument of harm' [quoting *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168 (1928)]; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties [citing *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226 (1990)] and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely [citing *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 589 (1994)]" (*Espinal*, 98 NY2d at 140; *see also Church*, 99 NY2d at 112-113).

Good & Fair's allegedly negligent inspection does not match any of these exceptions.

First, Good & Fair cannot be said to have launched an instrument of harm since there is no reason to believe that the inspection made Corbett's vehicle less safe than it was beforehand (*see Church*, 99 NY2d at 112). Inspecting the car did not create or exacerbate a dangerous condition (*see Espinal*, 98 NY2d at 142-143). Second, there was no detrimental reliance. The plaintiff driver did not know whether or when the Corbett vehicle had been inspected. He had never seen the vehicle before the accident, and had no relationship to its owner. Moreover, as Good & Fair observes, there are vehicles on the road, including many vehicles registered in other states, which have not passed a New York State motor vehicle safety inspection. As for the third exception, we cannot reach it in this case. The Appellate Division correctly determined that it was unpreserved for review.

Finally, as a matter of public policy, we are unwilling to force inspection stations to insure against risks "the amount of which they may not know and cannot control, and as to which contractual limitations of liability [might] be ineffective" (*Eaves Brooks*, 76 NY2d at 227). If New York State motor vehicle

inspection stations become subject to liability for failure to detect safety-related problems in inspected cars, they would be turned into insurers. This transformation would increase their liability insurance premiums, and the modest cost of a State-mandated safety and emission inspection ($12 at the time of the inspection in this case) would inevitably increase.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH and JONES concur; Judge PIGOTT taking no part.

Order affirmed, with costs.