NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 50

No. 2019-297

| Bradley Newton and Kristi Newton | Supreme Court |
| --- | --- |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Civil Division |
| Ron Preseau, Ron's Car Care et al. | March Term, 2020 |

Samuel Hoar, Jr., J.

Michael Sabbeth of Sabbeth Law, PLLC, Woodstock, for Plaintiffs-Appellants.

Kaveh S. Shahi of Cleary Shahi & Aicher, P.C., Rutland, for Defendants-Appellees.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.    **EATON, J.** Plaintiff, who was injured when his brother's truck broke apart while on a lift in plaintiff's garage, appeals the civil division's decision granting summary judgment to defendants associated with the state-designated inspection station where the truck had been inspected several months earlier. For the reasons expressed herein, we conclude that any legal duty owed by motor vehicle inspectors to third persons does not extend to plaintiff under the circumstances of this case, which did not involve operation of the subject vehicle or any other vehicle at the time of the incident in question. Accordingly, we affirm the civil division's decision.

¶ 2.    The material facts are not in dispute. In the early autumn of 2014, defendant Ron Preseau performed an annual state inspection of a 1994 GMC pickup truck owned by defendant Douglas Newton, who is plaintiff Bradley Newton's brother. In late January 2015, the truck broke

down while being operated on a public highway. Shortly thereafter, Douglas put the inoperable pickup on a flatbed truck and took it to plaintiff's detached garage. In 2010, plaintiff had purchased and installed a lift in his garage. After the plow was removed from the front of the pickup, Douglas put the pickup, which had at least 300 pounds of sand in its bed, on the lift. After diagnosing the problem, Douglas asked plaintiff to assess the damage. While plaintiff was under the truck, it collapsed into two pieces, and plaintiff was injured when one of the pieces pinned him to the floor of the garage.

¶ 3.     In July 2017, plaintiff filed a personal injury action, alleging in relevant part that defendant Preseau and others had acted negligently in connection with the inspection of the pickup truck.[1] Plaintiff alleged that defendant had negligently certified the truck as safe to operate even though its undercarriage was severely rusted, which he claims ultimately caused the accident that injured him. Defendant filed a motion for summary judgment, arguing that, as a matter of law, he owed no duty of care to plaintiff under the circumstances of this case and that plaintiff could not prove proximate cause. Plaintiff opposed the motion, and a hearing on the motion was held in May 2019. One month later, the civil division entered judgment for defendant. After examining our caselaw pertaining to § 324A of the Restatement (Second) of Torts, the court concluded that defendant owed no duty to plaintiff under the circumstances of this case. The court also expressed doubt, but ultimately did not decide, if plaintiff could prove causation under these circumstances.

¶ 4.     "We review a trial court's decision on a motion for summary judgment without deference, using the same standard as the trial court." Sheldon v. Ruggiero, 2018 VT 125, ¶ 14,

---

[1] Plaintiff also sued his brother on a negligence count but has neither pursued that claim nor disputed its dismissal. Along with defendant Ron Preseau, plaintiff also sued, as derivatively liable on his claim of negligent inspection, defendants Ron's Care Care, H.E. Clark Lumber Co., and Patricia Clark. Because these defendants are in the same position as Mr. Preseau with respect to the legal issues in this appeal, we refer only to defendant for simplicity's sake. Plaintiff's wife joined plaintiff's suit, claiming loss of consortium. For the sake of simplicity, we refer only to plaintiff.

209 Vt. 33, 202 A.3d 241. "Summary judgment is appropriate when, construing the facts as alleged by the nonmoving party and resolving reasonable doubts and inferences in favor of the nonmoving party, there are no genuine issues of material fact and judgment is appropriate as a matter of law." Id. (citing V.R.C.P. 56).

¶ 5. The parties agree that the controlling law is § 324A of the Restatement (Second) of Torts, which this Court formally adopted in Derosia v. Liberty Mutual Ins. Co., 155 Vt. 178, 182-83, 583 A.2d 881, 883 (1990). That section "delineates when an undertaking to render services to another may result in liability to a third person." Derosia, 155 Vt. at 182, 583 A.2d at 883. It provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).[2]

¶ 6. Whether a defendant owes a legal duty to another is a question of law that weighs public policy considerations to achieve fairness while examining factors such as the relationship of the parties, the nature of the risk, and the public interest at stake. Deveneau v. Wilt, 2016 VT 21, ¶ 8, 201 Vt. 396, 144 A.3d 324; see also LeClair v. LeClair, 2017 VT 34, ¶ 10, 204 Vt. 422, 169 A.3d 743 ("Whether or not one party owes a duty to another is an expression of policy considerations about when people are entitled to legal protections."); Hamill v. Pawtucket Mut.

---

[2] Section 43 of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm has replaced § 324A of the Restatement (Second) of Torts. Changes from § 324A to § 43 are not substantive but rather were made "for felicity of expression." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 43, cmt. a (2010).

Ins. Co., 2005 VT 133, ¶ 6, 179 Vt. 250, 892 A.2d 226 ("Ultimately, whether a duty exists is a question of fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, and the public interest at stake."). "Courts determine legislative facts necessary to decide whether a no-duty rule is appropriate in a particular category of cases." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7, cmt. b.

¶ 7.     With this in mind, we examine § 324A and our caselaw interpreting that provision. Generally, before examining § 324A's individual subsections, we consider whether a plaintiff has made "a threshold showing that there existed an undertaking to render services for another for the protection of a third party."[3] Kennery v. State, 2011 VT 121, ¶ 14, 191 Vt. 44, 38 A.3d 35.

¶ 8.     Like the civil division, we assume, without deciding, that designated inspection stations render services for the protection of third persons operating motor vehicles on state highways. But see Stiver v. Good & Fair Carting & Moving, Inc., 878 N.E.2d 1001, 1003 (N.Y. 2007) ("[A]s a matter of public policy, we are unwilling to force inspection stations to insure against risks the amount of which they may not know and cannot control, and as to which contractual limitations of liability might be ineffective." (quotation and alteration omitted)). We conclude as a matter of law, however, that defendant is not liable to plaintiff for a negligent undertaking pursuant to § 324A because the scope of any legal duty arising from defendant's undertaking in inspecting plaintiff's vehicle does not extend to the circumstances of this case.

¶ 9.     Because the subsections in § 324A are disjunctive, plaintiff need only satisfy one of them to survive summary judgment. Sheldon, 2018 VT 125, ¶ 30. The first subsection makes

_____

[3] We note that this Court in the past "has closely scrutinized the actual task assumed by the defendant in determining whether there was the threshold 'undertaking,' " and has rejected claims against state actors' inspection duties as part of their regulatory enforcement role. Sheldon, 2018 VT 125, ¶¶ 32-33. We have reasoned that "[w]hen the State inspects private businesses, it does so to police the employer's compliance with the law and to punish those employers that have not complied with the law, not to render services to the employer by assuming the employer's duty to its employees." Andrew v. State, 165 Vt. 252, 257-58, 682 A.2d 1387, 1391 (1996).

4

a person who undertakes services to protect third persons subject to liability when that person's failure to exercise reasonable care in undertaking those services "increases the risk of . . . harm." Restatement (Second) of Torts, § 324A(a).

¶ 10. This subsection plainly does not apply here. "The standard of comparison for this subsection is not the risk of harm created if defendant [had] exercised reasonable care," but rather "the risk of harm that would be present if defendant never undertook to render the services." Kuligowski v. Brattleboro Retreat, 2016 VT 54A, ¶ 80, 203 Vt. 328, 156 A.3d 436, superseded on other grounds by statute, 18 V.S.A. § 1882(a), as recognized in Lawson v. Halpern-Reiss, 2019 VT 38, ¶ 17, __ Vt. __, 212 A.3d 1213; see also Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 43, cmt. d (" 'Increased risk' means that the undertaking creates greater risk than the risk that existed in the absence of the undertaking."). Otherwise, a duty would exist in every case, rendering subsections (b) and (c) superfluous. Murphy v. Sentry Ins., 2014 VT 25, ¶ 28, 196 Vt. 92, 95 A.3d 985. Thus, "a plaintiff must identify sins of commission rather than omission" that "directly increase[] . . . risk of harm." Id. ¶ 27 (quotations omitted). "[A] party must prove facts showing that the alleged tortfeasor affirmatively either made, or caused to be made, a change in the conditions which change created or increased the risk of harm." Id. ¶ 28 (quotation omitted). Plaintiff has not alleged facts satisfying this standard.

¶ 11. The second subsection of § 324A establishes potential liability for a person who "has undertaken to perform a duty owed by the other to the third person." Restatement (Second) of Torts § 324A(b) (emphasis added). For the reasons explained below, we conclude that any duty owed by defendant to third persons as the result of his failing to exercise reasonable care in undertaking an inspection of Douglas's vehicle does not extend to plaintiff under the circumstances

5

of this case not involving the operation of that vehicle or any other vehicle in contact with that vehicle.[4]

¶ 12. The Vermont Legislature has authorized the Commissioner of the Department of Motor Vehicles to make regulations related to motor vehicle equipment where the use or nonuse of that equipment contrary to the regulations "may render the operation of the motor vehicle hazardous or unlawful." 23 V.S.A. § 1001(a)(1) (emphasis added). Further, the Legislature has pronounced that "[a] motor vehicle, operated on any highway, shall be in good mechanical condition and shall be properly equipped." Id. § 1221 (emphasis added). All motor vehicles are required to "undergo a safety and visual emissions inspection once each year." Id. § 1222(a). The inspections must take place at state-designated service stations "for the purpose of determining whether those motor vehicles are properly equipped and maintained in good mechanical condition." Id. § 1222(b)(1).[5]

---

[4] We offer no opinion as to whether a legal duty would exist pursuant to § 324A in circumstances similar to those in Tapley v. Golden Big O Tires, 676 P.2d 676 (Colo. 1983), upon which plaintiff relies, or Stiver, cited above. Tapley was a wrongful death case in which the Colorado Supreme Court did not confront the issue of duty under § 324A. In that case, a driver died of carbon monoxide poisoning while in his car parked along the highway one day after he had purchased the car from a business that had had it inspected six weeks earlier. Approximately one foot of tailpipe was missing, allowing exhaust fumes to enter the car. The fact that the decedent was parked along the highway with the car running rather than driving when he succumbed to exhaust fumes distinguishes this case from the instant one, which does not involve operation of the vehicle even under the broadest definition of the word operate. In Stiver, the plaintiff was injured when he struck a vehicle that had broken down on the highway. Plaintiff alleged that the vehicle he struck had been negligently inspected two months earlier. The New York Court of Appeals affirmed the grant of summary judgment to the business that had inspected the vehicle plaintiff struck. 878 N.E.2d at 1003.

[5] In 2018, the Legislature added the following clause to the last sentence of § 1221(b)(1):

> provided, however, the scope of the safety inspection of a motor vehicle other than a school bus or a commercial motor vehicle shall be limited to parts or systems that are relevant to the vehicle's safe operation, and such vehicles shall not fail the safety portion of the inspection unless the condition of the part or system poses or may pose a danger to the operator or to other highway users.

¶ 13. The Legislature did not set forth in these statutes an explicit private right of action to obtain compensation for alleged negligent inspections that cause injury. To the extent the statutes are aimed at protecting a class of persons, they focus exclusively on the operators of the inspected vehicles and other persons operating vehicles who may come into contact with the inspected vehicles on the highways. We recognize that situations such as the instant one may arise involving injuries related to the nonoperational use of an allegedly negligently inspected vehicle. But to the extent an inspector may be liable under § 324A(b), we are loath to extend any liability to persons who are not plainly within the class protected by the statutes requiring inspections. The relationship of the parties, the nature of the risk, and the public interest at stake are far too attenuated in such circumstances. See Deveneau, 2016 VT 21, ¶ 8 (stating identifying? main considerations in determining whether legal duty exists); see also O'Connell v. Killington, Ltd., 164 Vt. 73, 77, 665 A.2d 39, 42 (1995) (stating other factors to consider in determining if legal duty exists, including "the closeness of the connection between defendant's conduct and plaintiff's injury"). Compare Murphy, 2014 VT 25, ¶¶ 34, 38 (stating that "nature and extent" of undertaking is examined to determine scope of liability under § 324A(b) and concluding that general-liability insurer owed no duty to insured employer under that subsection as result of insurer's walkthrough on insured's premises to conduct safety survey) with Derosia, 155 Vt. at 183-87, 583 A.2d at 884-86 (concluding that jury verdict based on § 324A in workers' compensation case was supported by evidence that workers' compensation insurer's loss-prevention department regularly toured employer's premises and provided detailed reports outlining plans of action as part of its undertaking to protect employer's employees).

_____

2017 (Adj. Sess.), No. 206, § 22 (emphasis added). This clause is not applicable to this case involving a 2014 inspection, but it demonstrates the Legislature's focus on requiring inspections for the protection of the inspected vehicle's operator and other persons operating vehicles on the highway.

¶ 14.    Creating a duty under the instant circumstances would effectively make inspectors insurers of vehicles in virtually all situations in which persons alleged that a past negligent inspection caused physical harm.  See Stiver, 878 N.E.2d at 1003 ("If New York State motor vehicle inspection stations become subject to liability for failure to detect safety-related problems in inspected cars, they would be turned into insurers.").  This does not strike us as logical or fair.  As plaintiff's expert testified, the average inspection of a light truck lasts forty-five minutes and costs sixty-five dollars.  An expansive scope of liability would undoubtedly increase that cost.  See id. (turning motor vehicle inspectors into insurers of inspected vehicles "would increase their liability insurance premiums, and the modest cost of a State-mandated safety and emission inspection . . . would inevitably increase").  We decline to find a legal duty owed to plaintiff here, absent any indication that the Legislature intended to protect persons in plaintiff's situation—not involving operation of the allegedly negligently inspected vehicle or any other vehicle that came into contact with the inspected vehicle.  Accordingly, we find no legal duty under § 324A(b).

¶ 15.    The last subsection of § 324A makes a person who undertakes services for another liable to a third person if the harm to the third person is the result of reliance on the undertaking by either the third person or the person who obtained the services.  Restatement (Second) of Torts § 324A(c).  Here, as the civil division noted, plaintiff has made no showing of any specific reliance by him or his brother on the inspection of Douglas's pickup months earlier with respect to the incident that led to plaintiff's injury.  Rather, plaintiff argues only that, as a general matter, people rely on inspectors to tell them when their vehicles are unsafe.  We find no merit to this interpretation of § 324A(c) in the context of this claim by a third party who stood under the truck while it was raised on a lift for the purposes of repair.

¶ 16.    When Douglas brought his inoperable truck to plaintiff's garage and put it on the lift, he was aware that it had become inoperable because parts of the suspension system had separated due to rust.  Understandably, plaintiff does not allege that Douglas put the truck on the

8

lift in reliance upon the prior inspection. See <u>Murphy</u>, 2014 VT 25, ¶ 46 (stating that any reliance by employer on general-liability insurer's safety survey to forego correcting danger created by forklift attachment "would be unreasonable as a matter of law"). Nor does plaintiff allege that he even knew the truck had been inspected, let alone that he was willing to observe the underside of the truck while it was on the lift in reliance upon it having been inspected months earlier. Cf. <u>Stiver</u>, 878 N.E.2d at 1003 (finding "no detrimental reliance" where "plaintiff driver did not know whether or when [stalled vehicle he struck on highway] had been inspected"). Accordingly, we find no legal duty under § 324A(c).

¶ 17.    Having concluded that defendant owed no duty to plaintiff under the circumstances of this case, we need not consider the question of proximate cause.

<u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice

9